# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | | |
|---|---|---|
| LORETTA MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:13-6041-CV-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION

Plaintiff Loretta Miller ("Miller") seeks judicial review of the Defendant Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.* The Administrative Law Judge ("ALJ") found that although Miller suffered from multiple severe impairments, she retained the residual functional capacity ("RFC") to perform work as a lens inserter, wire wrapper, and production checker.

After carefully reviewing the parties' arguments and the entire record, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. Accordingly, the Commissioner's decision is AFFIRMED.

### Factual and Procedural Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Miller filed her application for disability insurance benefits on September 5, 2008, alleging a disability onset date of January 15, 2005. The Commissioner denied her application at the initial claim level on November 14, 2008, and Plaintiff subsequently requested an ALJ

hearing. On April 22, 2010, the ALJ held a hearing, and on May 26, 2010, he issued a decision holding Plaintiff was not disabled as defined in the Act. Plaintiff then challenged the ALJ's decision before the Appeals Council. On July 2, 2010, the Appeals Council vacated the ALJ's decision and remanded to the ALJ with specific instructions to obtain more information, more thoroughly discuss the opinion evidence, and properly formulate hypothetical questions for the vocational expert. On remand, the ALJ issued another unfavorable decision on February 21, 2012. Finally, on January 15, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

**Analysis**

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

Plaintiff contends the ALJ erred at step four by impermissibly discounting the opinions of several medical professionals and improperly formulating her RFC. As discussed below, substantial evidence supports the ALJ's step-four analysis.

Before analyzing her specific arguments, the Court addresses an aspect of the ALJ's decision which Plaintiff does not contest, but which nevertheless shades the Court's analysis. In his thorough and well-reasoned opinion, the ALJ cited several pieces of evidence that negatively reflected upon Plaintiff's credibility. For example, Plaintiff discontinued or failed to follow prescribed medical treatment on several occasions, gave hearing testimony on illegal drug use that was inconsistent with the record evidence, exhibited drug-seeking behavior during emergency room visits, and made allegations of disabling limitations that were inconsistent with some of her activities of daily living. R. at 19-22, 43-45, 52-53, 97, 610, 975-78, 1065-1357. Each of these observations provides a legally valid basis to discredit Plaintiff's credibility. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (activities of daily living which are

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); see 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

3

inconsistent with a plaintiff's allegations of disabling limitations detract from her credibility); *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (failure to follow a prescribed course of medical treatment detracts from a plaintiff's credibility); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (inconsistencies between a plaintiff's testimony and the record as a whole detracts from her credibility); *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (a pattern of drug-seeking behavior is relevant to the ALJ's credibility analysis). With the ALJ's credibility findings in mind, the Court now turns to Plaintiff's specific arguments.[2]

**A. The ALJ did not err in discounting the opinion evidence in the record.**

Plaintiff argues the ALJ erred in discounting the opinions of various treating and consulting medical professionals. The record includes opinions regarding both Plaintiff's mental and physical limitations. With respect to the opinion evidence on her physical limitations, Plaintiff contends the ALJ improperly rejected the opinion of her treating pain specialist Dr. Alejandro Blachar, M.D. ("Dr. Blachar"). As regards her mental limitations, Plaintiff asserts the ALJ erred in discounting the opinion of her treating psychiatrist Emad Kahn, M.D. ("Dr. Kahn"), as well as the opinions of several mental health professionals, including psychologist Marsha Toll, Psy.D. ("Dr. Toll"), social worker Glenn Schowendgerdt, LCSW ("Social Worker Schowendgerdt"), and psychiatrist Ed Malewski, M.D. ("Dr. Malewski").

Plaintiff first challenges the ALJ's decision to discount Dr. Blachar's opinion. A treating physician's opinion is typically entitled to controlling weight if it is well supported by, and not inconsistent with, other substantial evidence in the record. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing 20 C.F.R § 404.1527(c)(2)). A treating physician's opinion, however, "is entitled to controlling weight only to the extent it is consistent with medically

---

[2] In analyzing these arguments, the Court only considered evidence of disability between the alleged onset date, January 15, 2005, and December 31, 2009, the date on which her insured status expired under Title II of the Act. *See Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009).

acceptable clinical or laboratory diagnostic data." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion is not afforded controlling weight when the opinion is internally inconsistent, *Myers*, 721 F.3d at 525, or when it is inconsistent with, or unsupported by, the physician's own treatment notes. *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). An ALJ may also discount a treating physician's opinion if it is in the checklist format with no meaningful narrative explanation supporting the asserted limitations. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Although an ALJ may discount a treating physician's opinion, the ALJ must provide "good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

Here, the ALJ provided several good reasons for rejecting Dr. Blachar's opinion. The ALJ first acknowledged that the opinion failed to provide any meaningful support for the limitations contained therein. R. at 23. Indeed, Dr. Blachar's opinion solely consists of a perfunctory, checklist opinion without any narrative discussion or citation to any treatment notes supporting the limitations. R. at 925-26. Forms such as these are of little value. *McCoy*, 648 F.3d at 615.

Moreover, the ALJ identified arguable inconsistencies between Dr. Blachar's opinion and his treatment notes. Although Dr. Blachar opined that Plaintiff possessed significant limitations in her ability to sit, stand, walk, stoop, and crouch, R. at 925-26, his treatment notes lack any findings to support these limitations. R. at 570-77, 714-23, 887-95. In fact, on the final documented visit before completing the opinion form, Dr. Blachar noted that Plaintiff suffered only from moderate low-back pain and that she was responding well to the prescribed medication. R. at 887. He also observed that she was well developed with no signs of distress and demonstrated significant strength in her upper and lower extremities. *Id.* If Plaintiff was as

5

limited as Dr. Blachar suggested in his opinion, one would expect that his treatment notes would contain more significant findings of disability.

While the ALJ did not explicitly discuss the issue, the record also reveals that Dr. Blachar's opinion was arguably inconsistent with the record evidence. There was some evidence in the record supporting limitations in Plaintiff's ability to walk, sit, stand, crouch, and kneel, but on a whole, the record does not support the extent of limitations alleged in Dr. Blachar's opinion. Objective diagnostic tests showed that Plaintiff suffered from impairments in her hips, knees, back, and hands. R. at 462, 533, 571, 601, 815, 958, 1025-31, 1034. As the ALJ noted, however, numerous other clinical examinations and other objective tests revealed that these impairments only imposed mild to moderate limitations, not the significant limitations suggested in Dr. Blachar's opinion. R. at 19-20; 438-977. Accordingly, the Court finds that the ALJ properly discounted his opinion.

For many of the same reasons stated above, the ALJ did not err in discounting the opinion of Plaintiff's treating psychiatrist Dr. Kahn. Dr. Kahn opined that Plaintiff exhibited moderate or mild limitations in mental functioning. R. at 979-80. His opinion, however, was bereft of any meaningful explanation as it consisted solely of check-marked boxes. *Id.* And Plaintiff fails to direct the Court to any of his treatment notes or other record evidence which support these alleged mental limitations. *See Johnson v. Colvin*, No. 13-CV-6319-CJS, 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014) ("The Court is not required to comb the record in search of evidence in support of Plaintiff's position."). In fact, there exists record evidence, including Dr. Kahn's own treatment notes, which suggests that Plaintiff was not as limited as his opinion suggests. R. at 731-35, 759, 776, 778, 824, 835, 875, 943-57. Thus, the Court finds that the ALJ did not err in affording Dr. Kahn's opinion little weight.

Next, Plaintiff contends that the ALJ erred by discrediting the joint opinion from Social Worker Schowendgerdt and Dr. Malewski. As the ALJ duly noted, however, this opinion was primarily based upon Plaintiff's subjective complaints during a consultative interview. R. at 921-24. Given Plaintiff's dubious credibility, these medical professionals' reliance on her subjective complaints significantly detracts from their opinion. *See Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (ALJ may discount an opinion if it relies upon a plaintiff's subjective complaints). While there was some objective evidence supporting their opinion, such as Plaintiff's Global Assessment Score ("GAF") of 49,[3] other record evidence suggested that Plaintiff only exhibited minor or no limitations. R. at 921-24. For example, several mental health professionals noted that she was alert and oriented during most visits, R. at 759, 776, 778, 824, 835, 875, and Social Worker Schowendgerdt and Dr. Malewski even noted in their report that she possessed normal memory and affect. R. at 921. Given these discrepancies between the opinion and the record evidence, the ALJ did not err in discrediting this opinion.

Finally, Plaintiff suggests that the ALJ erred in "discarding" the opinion of Dr. Toll, a consultative psychologist. Far from discarding, the ALJ appears to have afforded Dr. Toll's opinion significant weight because her finding of no disability was consistent with Plaintiff's history of non-compliance with psychiatric treatment. R. at 22. To the extent that Plaintiff's contends the ALJ should have wholly adopted Dr. Toll's opinion, this argument is also without merit. As a matter of law, an ALJ is under no obligation to completely adopt a certain doctor's opinion. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). And although the ALJ did not

---

[3] A GAF score of 49 generally suggests that a claimant suffers from severe mental symptoms resulting in "a serious impairment in social, occupation, or school functioning." *See Pate-Fires v. Astrue*, 564 F.3d 935, 938 n.2 (8th Cir. 2009) (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 32 (4th ed. 1994)). Although Plaintiff did receive several other GAF scores in the 40-50 range, this occurred after the date her insurance expired and so is irrelevant to the current inquiry. R. at 1055, 1211, 1236.

completely adopt Dr. Toll's opinion, it appears that the ALJ did rely on Dr. Toll's opinion in formulating the RFC. R. at 22.

## B. The ALJ did not err in formulating Plaintiff's RFC.

As her second ground for remand, Plaintiff contends the ALJ neglected to include certain mental limitations. In particular, Plaintiff posits that her RFC should have reflected her limitations related to her ability to interact with the public, co-workers, or supervisors; ability to remember complex instructions; and ability to sustain persistence, pace, and concentration. This argument lacks merit.

As a threshold matter, the RFC properly accounted for Plaintiff's limitations regarding simple instructions and persistence, pace, and concentration. The ALJ explicitly included Plaintiff's limitations related to maintaining persistence, pace, and concentration in the RFC, and he also noted that these limitations resulted in Plaintiff only being able to perform simple, unskilled work. *See* R. at 17 ("[D]ue to loss of concentration persistence, pace, and memory, work was limited to simple, unskilled with a SVP [specific vocational preparation] of 2 or less."). With respect to Plaintiff's ability to only remember simple instructions, the RFC limitation to simple, unskilled work accurately reflected this limitation. *See Moore v. Astrue*, 623 F.3d 599, 604-05 (8th Cir. 2010) (suggesting that an RFC which limited the plaintiff to simple, unskilled appropriately accounted for his inability to understand and carry out complex or detailed instructions); *see also* SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996) (noting that the RFC should consist of concrete, work-related terms that accurately capture a claimant's limitations). Thus, the Court finds the RFC accurately captured Plaintiff's alleged limitations related to remembering simple instructions and maintaining persistence, pace, and concentration.

Next, Plaintiff asserts that the RFC lacked any mention of her inability to interact with the general public, co-workers, or supervisors. This argument fails for multiple reasons. First,

aside from Dr. Kahn's discredited opinion, R. at 979-80, substantial evidence does not appear to support these alleged limitations. Second, even assuming that substantial evidence on the record supported these limitations, the selected jobs of lens inserter, wire wrapper, and production checker do not require significant social interaction. *See* DOT, § 713.687-026, 1991 WL 679273 (taking instructions and helping is "not significant"); *id.*, § 723.687-0101, 1991 WL 679524 (same); *id.*, § 669.687-014, 1991 WL 686074 (same); *see also* SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985) (unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people.").[4] Therefore, even if the ALJ erred in not including these purported limitations, the error was harmless.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's decision, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:     May 23, 2014               /s/ Greg Kays
                 GREG KAYS, CHIEF JUDGE
                 UNITED STATES DISTRICT COURT

---

[4] The Court notes that the ALJ and vocational expert ("VE") referred to two of the potential jobs as "wire wrapper" and "production checker," whereas the Dictionary of Occupational Titles lists the titles as "patcher" and "dowel inspector." Although different names are used, it is clear from the record that these are the same positions because the DOT numbers used by the ALJ and VE for "wire wrapper" and "production checker" coordinate with the numbers in the DOT for "patcher" and "dowel inspector." *Compare* R. at 24 (listing "wire wrapper" DOT number as 723.687-010 and "production checker" DOT number as 669.687-014), *and* R. at 106 (listing "wire wrapper" DOT number as 723.687-010 and "production checker" DOT number as 669.687-014), *with* DOT, § 723.687-010, 1991 WL 679524 ("patcher") and *id*, § 669.687-014, 1991 WL 686074 ("dowel inspector"). Thus, it appears that the ALJ and VE meant to say patcher and dowel inspector, rather than wire wrapper and production checker.